84 F.3d 720
 Cheryl J. HOPWOOD, et al., Plaintiffs-Appellees,
v.
STATE OF TEXAS, et al., Defendants-Appellees,
v.
THURGOOD MARSHALL LEGAL SOCIETY and Black Pre-Law
Association, Movants-Appellants.
Douglas CARVELL, et al., Plaintiffs-Appellees,
v.
STATE OF TEXAS, et al., Defendants-Appellees,
v.
THURGOOD MARSHALL LEGAL SOCIETY and Black Pre-Law
Association, Movants-Appellants.
Cheryl J. HOPWOOD, et al., Plaintiffs,
Cheryl J. Hopwood, et al., Plaintiffs-Appellants,
v.
STATE OF TEXAS, et al., Defendants-Appellees.
Douglas CARVELL, et al., Plaintiffs,
Douglas Carvell, Plaintiff-Appellant,
v.
STATE OF TEXAS, et al., Defendants-Appellees.
 Nos. 94-50569, 94-50664.
 United States Court of Appeals,
Fifth Circuit.
 April 4, 1996.
 
 Janell M. Byrd, NACCP Legal Defense & Educational Fund, Inc., Washington, DC, Theodore M. Shaw, Norman J. Chachkin, NACCP Legal Defense & Educational Fund, Inc., New York City, Anthony P. Griffin, Galveston, TX, David Van Os, Van Os & Owen, Austin, TX, for Appellants.
 Dennis D. Parker, New York City, for TMLS-Proposed Intervenor.
 Terral Ray Smith, Small, Craig & Werkenthin, Austin, TX, Steven W. Smith, Austin, TX, for Elliott & Rogers.
 Michael E. Rosman, Center for Individual Rights, Washington, DC, for Cheryl Hopwood in No. 94-50569.
 Javier Aguilar, Sp. Asst. Atty. Gen., Dan Morales, Atty. Gen. for Texas, Austin, TX, Allan Van Fleet, Houston, TX, Harry M. Reasoner, Vinson & Elkins, Houston, TX, Barry D. Burgdorf, R. Scott Placek, Austin, TX, Samuel Issacharoff, Charles Alan Wright, University of Texas School of Law, Austin, TX, Betty Owens, Houston, TX, for State of Texas in No. 94-50569.
 Theodore B. Olson, Washington, DC, Michael E. Rosman, Center for Individual Rights, Washington DC, Joseph A. Wallace, Elkins, W.VA, for Hopwood and Douglas W. Carvell in No. 94-50664.
 Harry Reasoner, Betty R. Owens, Houston, TX, Javier Aguilar, Austin, TX, Barry D. Burgdorf, Vinson & Elkins, Austin, TX, Dana C. Livingston, Manuel Lopez, Allan Van Fleet, Houston, TX, R. Scott Placek, Samuel Issacharoff, Charles Alan Wright, Austin, TX, for State of Texas in No. 94-50664.
 Janell M. Byrd, Anthony P. Griffin, Theodore M. Shaw, Washington, DC, Norman J. Chachkin, New York City, Myles V. Lynk, Washington, DC, for Amicus Curiae (TMLS).
 Albert H. Kauffman, San Antonio, TX, John R. Vasquez, Austin, TX, for Amicus Curiae (Maldef).
 Appeals from the United States District Court for the Western District of Texas, Sam Sparks, Judge.
 ON SUGGESTION FOR REHEARING EN BANC
 (Opinion March 18, 1996, 5 Cir., 1995, 78 F.3d 932)
 Before SMITH, WIENER and DeMOSS, Circuit Judges.[1]
 PER CURIAM:
 
 
 1
 In No. 94-50569, treating the suggestion for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. The court having been polled at the request of one of the members of the court, and a majority of the judges in regular active service not having voted in favor (see FED.R.APP.P. 35 and 5TH CIR.R. 35), the suggestion for rehearing en banc is DENIED.
 
 
 2
 In No. 94-50664, the court having been polled, at the request of one of the members of the court, on the reconsideration of this cause en banc, and a majority of the judges in regular active service not having voted in favor, rehearing en banc is DENIED.
 
 
 3
 A dissent from the denial of rehearing en banc is forthcoming and is to be published.
 
 
 4
 POLITZ, Chief Judge, and KING, WIENER, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges, dissenting from failure to grant rehearing en banc.
 
 
 5
 Soon after the founding of the Republic, the Supreme Court indicated that the power of judicial review should be exercised reluctantly, only because it is essential to the decision of the case before a federal court and because the Constitution and the laws of the United States, as the "Supreme law of the Land," require it.[1]
 
 
 6
 This case was brought by four individual plaintiffs (not a class of plaintiffs) who were denied admission to the University of Texas Law School (Law School) in 1992, claiming that the Law School's admission process in 1992 violated the Fourteenth Amendment by giving race-based preferences exclusively to blacks and Mexican Americans.[2] In resolving the case presented by these four plaintiffs, the panel opinion directed the Law School not to use race as a factor in the admissions process at all.[3] In so doing, the opinion goes out of its way to break ground that the Supreme Court itself has been careful to avoid and purports to overrule a Supreme Court decision, namely, Regents of the University of California v. Bakke.[4] The radical implications of this opinion, with its sweeping dicta, will literally change the face of public educational institutions throughout Texas, the other states of this circuit, and this nation. A case of such monumental import demands the attention of more than a divided panel. It should have the attention of every active judge on this court. We respectfully but emphatically dissent from the denial of rehearing en banc.
 
 
 7
 For reasons that have not been communicated to this court, and upon which we can only speculate, neither the plaintiffs nor the defendants have sought rehearing en banc. It would appear that in this case, some of our colleagues may have embraced the rationale that, when sophisticated litigants represented by capable lawyers elect not to seek rehearing en banc, it is not our place to take any action. Our customary practice, however, does not support this position. Indeed, not infrequently we propose rehearing en banc on our own motion, before the parties have requested that we do so. We reject out of hand the notion that we are merely obsequious ciphers, subject to the tactical decisions and strategic maneuvers of the litigants before us. When the occasional case of such far-reaching importance to this court, to public higher education, and to this nation comes down the pike, we have a duty to address it and to do the best possible job that our whole court is capable of, regardless of the tactical decisions of the litigants. To decline to rehear a case of this magnitude because the parties have not suggested that we do so bespeaks an abdication of duty--the ducking of a tough question by judges who we know first-hand are made of sterner stuff.
 
 
 8
 The label "judicial activism" is usually found in the lexicon of those voicing concern about judges whom they perceive to be "liberal," fashioning remedies beyond the scope of what is deemed to be appropriate under the law. Such judicial legislating is generally excoriated as a "bad thing." Hopwood v. State of Texas[5] is a text book example of judicial activism. Here, two members of the three-judge panel determined to bar any consideration of race in the Law School's admission process. This "injunction" is wholly unnecessary to the disposition of the matter appealed and thus is clearly dictum; yet dictum that is a frontal assault on contrary Supreme Court precedent and thus not the kind of dictum we can ignore. By tenuously stringing together pieces and shards of recent Supreme Court opinions that have dealt with race in such diverse settings as minority set asides for government contractors, broadcast licenses, redistricting, and the like, the panel creates a gossamer chain which it proffers as a justification for overruling Bakke. We are persuaded that this alone makes the instant case not just en banc-worthy but en banc mandatory.
 
 
 9
 The Supreme Court has left no doubt that as a constitutionally inferior court, we are compelled to follow faithfully a directly controlling Supreme Court precedent unless and until the Supreme Court itself determines to overrule it.[6] We may not reject, dismiss, disregard, or deny Supreme Court precedent, even if, in a particular case, it seems pellucidly clear to litigants, lawyers, and lower court judges alike that, given the opportunity, the Supreme Court would overrule its precedent.
 
 
 10
 Members of this court have frequently "preached" against such judicial activism. In Williams v. Whitley[7] Judge Higginbotham explained the limits placed on appellate courts regarding Supreme Court precedent:
 
 
 11
 [A]bsent clear indications from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled sub silentio merely because its reasoning and result appear inconsistent with later cases. As [the district court] pointed out ... the Court issued a reminder to this effect only a few years ago in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989): "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." Id. at 484-85, 109 S.Ct. at 1921-22; see also id. at 486, 109 S.Ct. at 1923 (Brennan, J., dissenting) (describing anticipatory overruling as "an indefensible brand of judicial activism") ... In these circumstances, our role as an inferior court counsels restraint, even if the result otherwise appears inescapable.
 
 
 12
 In like manner, our colleagues have routinely counseled that judicial restraint is the order of the day, especially in the constitutional context. For example, in Walton v. Alexander,[8] Judge Garwood insisted that courts have a duty not to address constitutional issues not necessary to the disposition of an individual case.
 
 
 13
 [I]t is settled that courts have a "strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." County Court of Ulster County v. Allen, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). This "responsibility to avoid unnecessary constitutional adjudication" is "a fundamental rule of judicial restraint." Three Affiliated Tribes v. Wold Engineering, 467 U.S. 138, 157, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984). All this, of course, applies not only to the Supreme Court but to lower courts as well. See Bowen v. United States, 422 U.S. 916, 920, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641 (1975).
 
 
 14
 Variations of this theme can be found in the opinions of many of the judges of this court.[9]
 
 
 15
 Thus, it seems that this court has trouble practicing what it preaches, at least in this instance. For here, Justice Powell's opinion in Bakke made the Supreme Court's disposition precedential.[10] We unequivocally reject the proposition that it does not mandate our disposition. The syllogisms tacked together and proffered by the majority opinion as proof that Justice Powell's diversity conclusion is no longer good law do not, under any standards of which we are aware, qualify as an overruling of Bakke.[11] To the contrary, direct reference to Justice Powell's diversity analysis documents, supports, and reinforces its continuing validity.[12] Consequently, even if the members of the panel majority were convinced that the Supreme Court is certain to overrule Bakke, in the absence of an express overruling, they had no option but to grin, follow Bakke, bear it, and patiently await the Supreme Court's reconsideration. Rather than following this universally recognized canon, adhering to our established rules, and applying Supreme Court precedent, the panel charted a path into terra incognita. Judicial self-restraint was the first casualty; it proved to be too burdensome. The teachings proscribing the consideration of constitutional issues unnecessary to the decision soon followed. With these two limitations adroitly set aside, the panel majority apparently considered itself positioned to overrule Bakke.
 
 
 16
 Giving the panel majority the benefit of the doubt, as we are wont to do and should do, and assuming arguendo that Bakke's diversity issue had to be addressed in this particular case, would it not have been the more judicious course to have brought our full en banc powers to bear on this difficult, vitally important question? It can hardly be gainsaid that reasonable jurists can and likely will differ on an issue of such magnitude, depth, and importance. Indeed, this very truism compels giving to the entire court the opportunity to devote to this crucial case its focused consideration. Conceivably, after an en banc rehearing the panel result, its reasoning, and even its dicta, might be embraced by a majority of the en banc court. But that is not the point; even if that unprecedented and, we suggest, impertinent step--a federal circuit court, sitting en banc, purporting to overrule a Supreme Court precedent--were to be taken, it would not be taken until sixteen of the seventeen active judges of this court[13] had an opportunity to consider and participate in the deliberations on this matter fully.
 
 
 17
 There are many things which a "yea" vote on an en banc poll is not: It is not necessarily a vote against the analysis; it is not necessarily a vote against the result; it is not necessarily a vote against a panel opinion or in favor of a special concurrence or a dissent. It is rather an affirmative statement that, for one or more reasons, a case or an issue is worthy of the time, attention, and efforts of the entire court. Hopwood is such a case. Unfortunately, a bare majority of our colleagues have joined hands to deny this storied court the opportunity to consider this case en banc.
 
 
 18
 The majority of the panel overruled Bakke, wrote far too broadly, and spoke a plethora of unfortunate dicta. That was not their prerogative, yet this court declined to reconsider Hopwood en banc. From that decision we must, perforce, dissent.
 
 
 19
 STEWART, Circuit Judge, dissenting from failure to grant rehearing en banc.
 
 
 20
 I wholeheartedly concur in the dissent to the denial of en banc rehearing. I write separately to underscore the lack of historical perspective and sensitivity in both the panel majority's opinion and the vote not to consider this case en banc.
 
 
 21
 That it is the University of Texas School of Law's admissions policy at issue is a fact whose significance has not been lost on any of us. In 1946, this very school denied admission to Heman Marion Sweatt because he was black, prompting him to sue the University. Sweatt's real difficulties began fifty years before when the United States Supreme Court scripted one of this nation's most evil conceits in Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896), declaring "separate but equal" treatment of black Americans constitutional. Plessy was no more than a license for continued racial discrimination. However, in 1950 the Supreme Court held that excluding Sweatt on account of his race violated the Equal Protection Clause of the Fourteenth Amendment. Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114 (1950).[1]
 
 
 22
 History, in its characteristic irony, takes this court to that hallowed ground of civil rights jurisprudence to assess the University's effort to encourage minority enrollment and counter its legacy of segregation. It is an unfortunate, further irony that the panel majority opinion should so overreach in its decision. In Sweatt's case, the Supreme Court explicitly adhered to the "principle of deciding constitutional questions only in the context of the particular case before the Court," drawing its decision "as narrowly as possible." Id. at 631, 70 S.Ct. at 849 (citing Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947)). If there ever were a time to end legalized segregation, that was the time. The Court was in a position to paint with a broad brush and eliminate the very regime which denied civil rights to Sweatt and other blacks. Chief Justice Vinson's opinion for the Court, however, resisted calls to wax on "[b]roader issues ... urged for our consideration." Id.
 
 
 23
 The panel majority in our case displayed no such discipline, instead taking the unauthorized liberty of deciding the appropriateness of diversity as an admissions criterion, not just the merits of the instant admissions policy. Constitutional interpretation is a sensitive project. Limiting ourselves to the facts before the court keeps the process measured--it is a traditional check which respects the need to calibrate rights and interests carefully. Given the sensitivity of constitutional interpretation, the panel majority's decision disrespects the importance of the facts. Refusing to correct this travesty en banc is a grave error.
 
 
 24
 As to the request to intervene, what class of persons is more qualified to adduce the evidence of the present effects of past discrimination than current and prospective black law students? Reading Sweatt as a benchmark decision marking the end of de jure segregation is akin to shelving Trotsky's The History of the Russian Revolution upon reading only the preface. Just as those initial pages fail to give a true rendition of the entire work, so too does Sweatt give only a superficial understanding of the racism it hardly addressed. A year after the Supreme Court ordered that Sweatt be admitted, he left the law school "without graduating after being subjected to racial slurs from students and professors, cross burnings, and tire slashings." Hopwood v. State of Texas, 861 F.Supp. 551, 555 (1994). Furthermore, "the record reflects that during the 1950s, and into the 1960s, the University of Texas continued to implement discriminatory policies against both black and Mexican American students." Id. It was not until 1983 that Texas even agreed, after years of threats of federal action, to an acceptable plan to desegregate its higher education system. In 1987 and again in 1994, the Department of Education instructed Texas to maintain its plan. To this day, Texas's higher education system still has not been declared in compliance with Title VI and the Fourteenth Amendment. Id. at 556-57.
 
 
 25
 "The life of the law," Justice Oliver Wendell Holmes observed, "is not logic, but experience." To divorce the time in which it was legally possible for Sweatt to attend the Law School from the reality he experienced there is to ignore the very insidiousness of racial discrimination. It was the vestiges of that discrimination which, far from being destroyed, thrived and drove Sweatt out of the Law School. We act no less callously now in pretermitting the consideration of that legacy of discrimination by denying rehearing.
 
 
 26
 For all these reasons and those expressed in the collective dissent, I vehemently disagree with our court's decision not to rehear this case en banc.
 
 
 
 [1]
 Judge Emilio M. Garza did not participate in this decision
 
 
 [1]
 Baker v. Wade, 769 F.2d 289, 298 (5th Cir.1985) (Goldberg, J., dissenting) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816))
 
 
 [2]
 The Law School no longer employs the system that was in place for 1992
 
 
 [3]
 Judge Smith wrote the opinion for the panel, and Judge DeMoss joined that opinion in full. Judge Wiener, who wrote separately, did not join the panel opinion in this conclusion
 
 
 [4]
 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978)
 
 
 [5]
 78 F.3d 932 (5th Cir.1996)
 
 
 [6]
 See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)
 
 
 [7]
 994 F.2d 226, 235 (5th Cir.1993)
 
 
 [8]
 20 F.3d 1350, 1356 (5th Cir.1994). We cannot but note that a majority of our active judges voted Walton en banc to correct the majority's erroneous interpretation of Supreme Court precedent regarding an issue that was not necessary for the resolution of the case
 
 
 [9]
 See also United States v. Mendiola, 42 F.3d 259, 260 n. 1 (5th Cir.1994) (Barksdale, J.) ("It goes without saying that we have a strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration."); Manning v. Upjohn Co., 862 F.2d 545, 547 (5th Cir.1989) (Smith, J.) ("Principles of judicial restraint dictate that if resolution of an issue effectively dispose of a case, we should resolve the case on that basis without reaching any other issues that might be presented."); Apache Bend Apartments, Ltd. v. United States, 987 F.2d 1174, 1175 (5th Cir.1993) (Jolly, J.) ("The judicial power to adjudicate constitutional questions is reserved for those instances in which it is necessary for the vindication of individual rights.") (emphasis added); Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir.1994) (Jones, J., dissenting, joined by Garwood, Smith, Barksdale, and DeMoss, JJ.) (" 'The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in [the constitutional] field.' ") (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992))
 
 
 [10]
 In a part V.C. of his opinion, Justice Powell writes,
 In enjoining [the University of California at Davis] from ever considering the race of any applicant, however, the courts below failed to recognize that the State has a substantial interest that legitimately may be served by a properly devised admissions program involving the competitive consideration of race and ethnic origin.
 Bakke, 438 U.S. at 320, 98 S.Ct. at 2763. Justices Brennan, White, Marshall, and Blackmun joined Justice Powell in this holding. Id. at 271 n. *, 98 S.Ct. at 2738 n. *.
 
 
 [11]
 Lest there be any doubt, we are firmly convinced that, until the Supreme Court expressly overrules Bakke, student body diversity is a compelling governmental interest for the purposes of strict scrutiny
 
 
 [12]
 See Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 286, 106 S.Ct. 1842, 1853, 90 L.Ed.2d 260 (1986) (O'Connor, J., concurring) (recognizing racial diversity as sufficiently compelling in the context of higher education)
 
 
 [13]
 Judge Emilio M. Garza, our seventeenth active judge, recused himself from the outset
 
 
 [1]
 When a court ordered the State to provide a law school for blacks, Texas created a "makeshift law school that had no permanent staff, no library staff, no facilities, and was not accredited." Hopwood v. State of Texas, 861 F.Supp. 551, 555 (1994). This "law school" consisted of 3 rooms in a basement and had two professors. Paul Butler, Affirmative Action Admissions, Dallas Morning News, April 7, 1996, at 1J