VIVIAN TANKSHIPS CORPORATION

v.

Candido CASTRO and I.F. Hingle, Civil Sheriff of Plaquemines Parish.

No. Civ.A. 98–1671.

United States District Court, E.D. Louisiana.

Oct. 26, 1998.

David B. Lawton, Gerald M. Baca, Terriberry, Carroll & Yancey, New Orleans, LA, for Vivian Tankships Corp.

Stephen P. Bruno, Bruno & Bruno, New Orleans, LA, Richard J. Dodson, Kenneth H. Hooks, III, Dodson & Vidrine, Baton Rouge, LA, for Candido Castro.

George Pivach, II, Timothy Thriffiley, Pivach & Pivach, Belle Chasse, LA, I.F. Hingle.

### *ORDER AND REASONS*

PORTEOUS, District Judge.

Before the Court is defendant's Motion for Partial Summary Judgment pursuant to Federal Rules of Civil Procedure 56 and 57. The parties submitted several memoranda to support their positions and oral argument was heard on September 17, 1998. After review of the parties' written and oral arguments and the relevant law, the Court submits the following order and reasons.

## I. BACKGROUND

Vivian Tankships Corporation employed Candido Castro during a period of time in 1997 in which Castro claims to have suffered a hernia resulting from his service on the M/V OVERSEAS VIVIAN, a U.S. flagged vessel owned by Vivian Tankships. In March 1998, Castro filed suit against Maritime Overseas Corporation.[1] The same month, the 25th Judicial District Court for the Parish of Plaquemines, pursuant to La. C.Civ.Pro. Art. 3541(5),[2] et seq., issued a writ of attachment against the M/V OVERSEAS VIVIAN to secure judgement satisfaction.

In June 1998, Vivian Tankships filed this suit seeking to restrain the further attachment of its vessel in state court proceedings, seeking to declare Louisiana's nonresident attachment statute unconstitutional as applied to vessels engaged in interstate or foreign commerce, seeking declaratory judgment with respect to maintenance and cure, and seeking damages for the wrongful attachment of the vessel. In July 1998, plaintiff filed a motion for partial summary judgment solely on the Constitutionality of the Louisiana nonresident attachment statute. Specifically, plaintiff objects to the use of federal maritime *in rem* jurisdiction as a vehicle for obtaining state *in personam* jurisdiction over a nonresident company—*i.e.,* U.S. Flag carriers. Plaintiff claims that Louisiana's nonresident attachment statute is unconstitutional because (1) statutorily inequitable bond requirements unduly burden the free flow of interstate commerce and thus, violate the Commerce Clause; (2) lack of a preattachment hearing and the delay in obtaining a postattachment hearing violates the Due Process Clause; and (3) requiring owners to register to do business in Louisiana or suffer vessel attachment in the alternative is a forced licensure of a U.S. flag vessel and violates the Supremacy Clause.

---

1. Castro filed suit against Maritime Overseas Corporation in the belief that it owned the M/V OVERSEAS VIVIAN. Plaintiff, Vivian Tankships Corporation, asserts that it is the owner of the M/V OVERSEAS VIVIAN. However, as ownership of the M/V OVERSEAS VIVIAN is not at issue here and for the purposes of this proceeding, it is unimportant to determine the actual owner.

2. A writ of attachment may be obtained when the defendant: ... (5) Is a nonresident who has no duly appointed agent for service of process within the state.

## II. JURISDICTION AND STANDING

■ Defendants[3] assert that there is no case or controversy because the ship is no longer being held and because Castro agreed not to attempt to seize the ship again. The defendants further argue that plaintiff's complaint is purely conjectural because plaintiff uses language in its complaint such as "anticipated," and "will call sometime in the next 30 days," and "in the event." Thus, Castro claims, the case is moot, nonjusticiable and should be dismissed summarily.[4]

Plaintiff maintains that it has standing to raise the issue of constitutionality because the M/V OVERSEAS VIVIAN remains under an immediate threat of nonresident attachment should it not be registered to do business in Louisiana.[5] Plaintiff argues that because seamen are not entitled to workman's compensation, but must sue his employer for compensation resulting from injuries on the job and because the M/V OVERSEAS VIVIAN is an U.S. flag vessel, the risk of suit is substantial. It is plaintiff' position that at any time, individuals may entreat Sheriff Hingle to seize the vessel despite the fact that there has been no meaningful hearing.

A showing of an immediate of definite threat of governmental action or policy that will adversely or continues to adversely affect a present interest is sufficient to maintain the suit. *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). When the question raised is "capable of repetition, yet evading review," the courts have maintained jurisdiction. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). *See also, Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Int'l Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991).

Given that the M/V OVERSEAS VIVIAN is an U.S. flag vessel that will likely visit a Louisiana port again in the future, and given the fact that the Louisiana maintains the current system for nonresident attachment, the issue of constitutionality is not moot and will be reviewed by this court.

■ Defendants also assert that this Court lacks jurisdiction because there is a pending state court action. It is defendants' position that this Court is required to dismiss this case because all parties are competently represented, all issues can be competently addressed in the state court forum, and plaintiff filed suit in anticipation of another suit being filed in state court.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. This case presents a constitutional challenge to Louisiana's nonresident attachment statute, La.C.Civ. Pro. 3501, *et seq.* under the United States Constitution. Thus, pursuant to 28 U.S.C. § 1331, this court has federal question jurisdiction.

## III. STANDARD OF REVIEW

A moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then go beyond the pleadings and through depositions or admissions on file show that there is a genuine issue for trial as to the material facts that entitle the moving party to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

The court now turns to the merits of the arguments with these standards in mind.

---

**3.** Defendants include the named plaintiffs, Candido Castro and Plaquemines Parish Sheriff I.F. Hingle and the State of Louisiana as intervenor. Sheriff Hingle did not file an opposition to the motion for partial summary judgment, but instead adopted the arguments of his codefendants at oral arguments.

**4.** *See, Cargill, Inc. v. United States*, 188 F.Supp. 386 (E.D.Mo.1960); *Miller v. Udall*, 368 F.2d 548 (10th Cir.1966). (A declaratory judgment may not

be used to secure judicial determination of moot questions.)

**5.** Louisiana courts have held that the mere appointment of an agent for service of process is not sufficient to prevent the attachment of a vessel. *Balashov v. Baltic Shipping Co.*, 687 So.2d 1101, (La.App. 4th Cir.1997), *writ denied* 692 So.2d 449 (La.1997).

## IV. LAW AND ARGUMENT

*Commerce Clause*

Plaintiff argues that the free flow of interstate commerce is unduly burdened because Louisiana law requires nonresident companies to register in Louisiana to avoid attachment of property. Registering as a foreign company within Louisiana, plaintiff asserts, would subject the company to suit for all transactions regardless of whether such suit arose or had any connection with the state resulting in considerable costs to the vessel and owner. Additionally, plaintiff argues that the prejudgment attachment bond requirement is discriminatory and burdensome on interstate commerce. Should a resident defendant be subject to prejudgment attachment, the statute requires plaintiff to post bond equal to his demand.[6] La.C.Civ.Pro. Art. 3544. On the other hand, should a nonresident defendant's property be attached, the plaintiff's bond requirement does not exceed $250 without further showing. *Id.*

Defendant claims that Louisiana attachment procedure is not an effort to regulate commerce and are therefore, not violative of the commerce clause. Also, defendant asserts that the commerce clause creates no individual rights,[7] and that this claim should more be appropriately made under the due process and equal protection ambits.[8]

▇▇▇ On its face the commerce clause enables Congress to regulate interstate commerce, however, it has also been interpreted to limit the states from directly discriminating against interstate commerce. This limiting affect, known as the dormant commerce clause, creates a "virtually per se rule of invalidity" applicable to state regulations that directly discriminate against interstate commerce. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). The dormant commerce clause also invalidates state regulations that indirectly discriminate if the regulation imposes an undue burden on interstate commerce. *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). Nonetheless, "the fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (finding a Maryland statute providing that producers or refiners of petroleum products could not operate any retail service stations within Maryland and requiring that all temporary price reductions be extended uniformly to all service stations supplied valid under the commerce clause.) Additionally, a discriminatory state law that is "demonstrably justified by a valid factor unrelated to economic protectionism," *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 274, 108 S.Ct. 1803, 1808, 100 L.Ed.2d 302 (1988), will be upheld if the State law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," *id.,* 486 U.S. at 278, 108 S.Ct. at 1810. *See, Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine,* 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997), *Scalia, J. dissenting.*

▇▇▇ By its very nature, shipping transcends state lines and international boundaries and is international in its scope and importance. Because of this, a plaintiff could have some difficulty when attempting to effect service of process on the potential defendant. The Louisiana Supreme Court recently examined the problem and found:

> In the maritime context, the shipowner, often in a foreign land was usually not subject to the court's jurisdiction. "Quasi

---

**6.** "The security required for the issuance of a writ of attachment shall be for the amount of the plaintiff's demand, exclusive of interest and costs. If the writ is obtained on the sole ground that the defendant is a nonresident, the security shall not exceed two hundred fifty dollars, but on proper showing the court may increase the security to any amount not exceeding the amount of the demand."

**7.** *See, White Mountain Apache Tribe v. Williams,* 810 F.2d 844, 849 (9th Cir.1985), *cert. denied* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987).

**8.** *See generally, International Organization of Masters, Mates & Pilots v. Andrews,* 831 F.2d 843 (9th Cir.1987). However, defendant asserts that all due process and equal protection requirements are met.

in rem" jurisdiction rectifies this scenario. Pursuant to quasi in rem, if a defendant cannot be served within the territory, the court derives its authority to adjudicate personal claims against the defendant through attachment of defendant's property located. Moreover, attachment of property to obtain quasi in rem jurisdiction is used to obtain personal jurisdiction of the defendant, and may be unrelated to the underlying maritime claim. (Cites omitted.) *Lejano v. Bandak*, 705 So.2d 158, 163 (La.1997).

Although the Louisiana nonresident attachment statute is not aimed at providing specifically, a maritime remedy, it is aimed at providing a method for obtaining jurisdiction over nonresidents.

■ Traditionally, commerce clause challenges have been directed at statutes that involved taxation or protectionist regulations. The statute at issue is part of the Louisiana Code of Civil Procedure. Nothing in the code or articles here suggests that Louisiana's nonresident attachment statute discriminates, intentionally or in effect, against out of state goods or suppliers. The law here is procedural, and directed toward enabling individuals to gain quasi in rem jurisdiction over individuals against whom a plaintiff has a claim. It is not an attempt to regulate commerce, and thus, is not violative of the commerce clause.

*Due Process*

■ Vivian Tankships stakes its due process challenge on the premise that La. C.Civ.P. art 3501 *et seq.* is procedurally defective because the posting of a $250 bond, enables a complainant to seize a ship worth millions of dollars without proof of the alleged liability or the amount of his claim. Additionally, plaintiff argues, a preattach-

ment hearing is not required and obtaining a post attachment hearing takes several days, causing the nonresident shipowner considerable financial loss.

Defendant rejects plaintiff's contention that the nonresident attachment statute is violative of the Due Process clause and argues that there are processes in place that protect plaintiff's due process expectation. Second, defendant asserts, attachment is a necessary, unique part of maritime commerce [9] that serves the dual purpose of securing the respondent's appearance and incidentally securing the libelant's claim.[10] Castro argues that a shipowner is always aware of the risk of being hailed into a foreign court and such risk does not offend due process.[11]

In *Ownbey v. Morgan, et al.*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), the Supreme Court closely examined Delaware's nonresident attachment procedure and found it to be constitutional. In *Ownbey*, the Court looked at the history of foreign attachment and the roll it played in the commercial development of our country, finding that a property owner who, "absents himself from the territorial jurisdiction of a state, leaving his property within it, must be deemed ex necessitate to consent that the state may subject such property to judicial process to answer demands against him in his absence ... A procedure customarily employed, ... can not be deemed inconsistent with due process of law, ..." 256 U.S. 94, 41 S.Ct. at 437.

Plaintiff argues that since *Ownbey*, the Supreme Court has revisited the issue of attachment and due process [12] and overruled its *Ownbey* decisions *sub silentio*. However, "absent clear indications from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been over-

---

**9.** *See, Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 6 L.Ed. 369 (1825); *Atkins v. Fibre Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303, 21 L.Ed. 841 (1873).

**10.** *See, East Asiatic Co. v. Indomar*, 422 F.Supp. 1335 (S.D.N.Y.1976).

**11.** *See, Trans–Asiatic Oil, Ltd. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir.1984).

**12.** *See generally, Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, (1969) (Harlan, J. concurring); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). *Schafer v. Heitner; North Georgia Finishing, Inc. v. Di-Chem, Inc.* 419 U.S. 601, 610, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

ruled *sub silentio* merely because its reasoning and result appear inconsistent with later cases." *Hopwood v. Texas,* 84 F.3d 720, 723 (5th Cir.1996). While this Court agrees that the Supreme Court has provided many procedural safeguards with regard to attachment proceedings, it has not specifically overruled *Ownbey.*

Considering that *Ownbey* examined the constitutional due process of a foreign attachment statute, similar to the Louisiana statute at issue here, the Court finds that due process is sufficiently satisfied.

*Forced Licensure*

■ Plaintiff contends Louisiana's law requiring owners to register to do business in Louisiana or be subject to vessel attachment in the event of a suit is invalid under the Supremacy Clause. Also, plaintiff asserts that requiring a vessel to "enroll" with the Secretary of State and requiring it to respond to all suits is an improper function of the legislature. Plaintiff argues that *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977), holds that federal enrollment and licensing laws preempt state statutes.

Defendants argue that federal enrollment and license laws do no preempt state attachment and sequestration statutes and that *Douglas* does not stand for that proposition. Further, defendant argue that the federal enrollment and license laws confer no immunity from the operation of valid laws of a state.

The Supreme Court in *Douglas* held unconstitutional a Virginia statute that refused to allow a nonresident, federally-licensed fishing vessel, to fish within state waters. The court held that no state may completely exclude federally-licensed vessels from engaging in commerce within state territorial jurisdiction. *Id.* 431 U.S. at 280–281, 97 S.Ct. 1740. Additionally, the *Douglas* court stated that, "[federal] enrollment and license confer no immunity from the operation of valid laws of the state." *Id.* 431 U.S. at 277, 97 S.Ct. 1740; *see also, Smith v. Maryland,* 59 U.S. 71, 18 How. 71, 15 L.Ed. 269 (1855). "The mere possession of a federal license ... does not immunize a ship from the operation of normal incidence of police power." *Doug-*

*las,* 431 U.S. at 278, 97 S.Ct. 1740, *citing, Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

Louisiana law does not require vessel documentation to prevent operation in Louisiana territorial waters, rather, it provides a company or owner with a method of avoiding attachment while not depriving those filing suit of a method for obtaining jurisdiction. The law is well within the "operation of normal incidence of local police powers" because, Louisiana is not seeking to prevent involvement in commerce, rather it is seeking to protect a potential plaintiff's rights by providing a vehicle for obtaining jurisdiction.

Accordingly,

The Court, finding that the Louisiana nonresident attachment statute is Constitutional, **DENIES** plaintiff's motion for partial summary judgment.