73 So.2d 640 (1954)
NORMANN
v.
BURNHAM'S VAN SERVICE et al.
No. 20324.
Court of Appeal of Louisiana, Orleans.
June 30, 1954.
*642 H. Martin Hunley, Jr., New Orleans, for Burnham's Van Service, defendant-appellant.
Normann & Normann and Lee F. Murphy, New Orleans, for plaintiff-appellee.
Before McBRIDE, J., and NABORS and MARKS, Judges ad hoc.
McBRIDE, Judge.
This appeal was taken by Burnham's Van Service, a partnership domiciled in Georgia, engaged in the business of motor freight carrier, from a judgment rendered in plaintiff's favor for $137, representing the full value of certain articles lost from an interstate shipment. The other defendant is not before us inasmuch as the suit as against her was dismissed and plaintiff did not appeal. The nonresident writ of attachment issued on plaintiff's prayer and under which certain property of appellant had been seized was dissolved below. The pith of the defense interposed by appellant is that the bill of lading which governed the shipment is the standard one prescribed by the Interstate Commerce Commission and its provisions limit the carrier's liability for loss to an amount not in excess of 30 cents per pound per article. The pertinent provisions appear in the bill of lading thus:
"Valuation
"Shippers are required to declare in writing the released value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding 30 cents per pound, per article.
 "Frank S. Normann, Jr.
 "(Shipper or Agent)"
Attempting to counteract the defense, plaintiff adopts the position that the limitation is ineffectual for two reasons: first, because he as shipper had not been given a choice between higher or lower liability by paying a correspondingly greater or lesser freight rate, and, second, the articles were stolen by the carrier's servants.
Plaintiff, an officer in the United States Naval Reserve, Medical Service, had been released from active Naval duty with benefit of government-paid transportation of his personal belongings from Portsmouth, Virginia, to New Orleans. Shipping arrangements were made with plaintiff's consent by the Naval Supply Officer, and on October 28, 1952, a lot of household goods and other personal effects of plaintiff were "picked up" by appellant for transportation as aforesaid. Included was a wardrobe which contained wearing apparel and a carton containing twelve bottles of assorted liqueurs. Upon delivery of the shipment to the William Rednour Transfer & Storage Company in New Orleans, it was noted that one side of the wardrobe was crushed and the carton had been recoopered. Plaintiff ascertained on the day following the *643 release of the shipment by the carrier to the storage company that a civilian suit and a fur-lined jacket were missing from the wardrobe and that there was in the carton but four empty bottles.
The evidence satisifies us that the missing articles had been received by appellant at Portsmouth and the loss occurred en route to New Orleans.
A limitation on the amount of liability in a bill of lading issued by a common carrier in interstate commerce and approved by the Interstate Commerce Commission is valid and binding. Adams Express Company v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314; American Railway Express Co. v. Levee, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140. But is has been held that only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit the recovery to an amount less that the actual loss sustained. New York, N. H. & H. R. Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500, and cases there cited.
The Government Freight Way Bill directed the consignment of the shipment to Lt. Frank Simon Normann, Jr., MC, US NR, 8124 Sycamore Street, New Orleans, Louisiana, charges to be billed to Navy Department, Bureau of Supplies and Accounts, "valuation not exceeding 30¢ per pound on each article of hhg. to be picked up on 10/28/52."
Plaintiff paid no part of the freight charges, the Navy Department defraying all expenses; the Navy made all arrangements and transacted for the rate to be applied; plaintiff signed the paragraph labeled "Valuation" in the bill of lading at a time when he was called upon to affix his signature to many other documents which necessarily had to be executed in connection with his discharge.
In view of those facts, we can only come to the conclusion that the Navy Department, through its Supply Officer at Portsmouth, acted in the capacity of plaintiff's agent in the matter of the shipment and that plaintiff became effectively bound by whatever arrangements the Supply Officer had made with the carrier. If there can be any question as to that, it is set at rest by plaintiff's action in signing the bill of lading, thus ratifying whatever steps the Supply Officer had taken in his behalf. Under these circumstances, we do not think that the duty rested on the carrier to specifically offer plaintiff a choice between higher or lower liability by paying a greater or lesser freight rate. A carrier has the right to assume that an agent or freight forwarder has the authority to agree upon the terms of the shipment for his principal. See Great Northern Railway Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 L.Ed. 703.
There is no allegation in the petition that the missing articles were lost by theft perpetrated by the agents of appellant, and there is no direct evidence showing that there was any theft of plaintiff's property; however, the evidence tends to indicate that some person or persons did cut the paper tape sealing in the contents on both the wardrobe and carton. But even if it could be said that the garments and liqueurs had been fraudulently taken by appellant's employees for their own benefit, that fact alone would not defeat the operation of the limitation of the amount of liability. Plaintiff, to be successful, would be called upon to go a step further and shoulder the burden of proving that there was an actual conversion of the goods by the carrier to its own use. Moore v. Duncan, 6 Cir., 237 F. 780; Railway Express Agency, Inc., v. Marchant Calculating Mach. Co., D.C.Mun.App., 52 A.2d 277; D'Utassy v. Barrett, 219 N.Y. 420, 114 N.E. 786, 5 A.L. R. 979; Henderson v. Wells Fargo & Co. Express, Tex.Civ.App., 217 S.W. 962.
It is well settled that when a consignee makes a claim against the carrier for damages or loss of goods in transit, the consignee, in order to recover, must prove the following: (1) receipt of the goods by the carrier in good condition; (2) the damaged condition or the loss when *644 delivered; and (3) the amount of the loss. Yuspeh v. Acme Fast Freight, 222 La. 747, 63 So.2d 743, and cases cited. The plaintiff has met the prescribed requisites, but our conclusion is that the trial judge committed error in awarding an amount to compensate for the full value of the nondelivered articles, in view of the limitation of the amount of liability incorporated in the bill of lading. The limitation binds plaintiff and the judgment is to be regulated by the terms of the limitation. The combined weight of the articles appears to be 48 pounds, thus establishing appellant's maximum indebtedness at the sum of $14.40.
Plaintiff in an answer to the appeal complains of the judgment insofar as it dissolved the nonresident writ of attachment issued against appellant's property, and prays that the said part of the judgment be reversed and for a maintenance of the attachment.
According to C.P. art. 240, a creditor may obtain an attachment of the property of his debtor when such debtor resides out of the State.
Until the advent of Act 215 of 1920, a plaintiff could not attach the property of the defendant when the cause of action was one ex delicto. See 8 T.L.R. 300 and cases therein cited. By the provisions of Act 215 of 1920, a plaintiff was given the right to sue out a writ of attachment when the ground was the nonresidence of defendant, in all cases in which the demand arose from an offense, quasi-offense, or tort, but this Act contained the following proviso:
"* * * provided that the provisions of this act shall not apply in cases where the individual, partnership (commercial or ordinary) or corporation has appointed an agent in the State of Louisiana upon whom service or process may be made."
In 1932, by passing Act 220, the Legislature permitted nonresident attachments in cases where the demand is for a money judgment, whatever may be the nature, character, or origin of the plaintiff's claim, and whether the claim be for a sum certain or for an uncertain amount and whether the claim be liquidated or unliquidated. The proviso with reference to nonresident defendants who had appointed an agent in the State of Louisiana upon whom service of process may be made was substantially retained.
Act 220 of 1932 became the source of LSA-R.S. 13:3952 of 1950, and that section reads:
"In all suits in which the demand is for a money judgment and the defendant is a non-resident of this state, or when the defendant is not domiciled in this state, whatever may be the nature, character or origin of the plaintiff's claim, the plaintiff may sue out a writ of attachment against the defendant's property, whether the claim be for a sum certain or for an uncertain amount, and whether the claim be liquidated or unliquidated, upon making affidavit and giving bond as now required by law in suits against nonresident defendants, provided that the provisions of this Section shall not apply in cases in which the defendant has a duly appointed agent in the state upon whom service of process may be made." (Italics ours.)
Appellant points to the italicized provisions of the section of the 1950 LSA-Revised Statutes and argues that the remedies accorded a plaintiff in an attachment suit against a nonresident cannot be invoked against appellant which has an agent for service of process in Louisiana, who was duly appointed in accordance with the Interstate Commerce Act, Part II, 49 U.S. C.A., § 321(c), which reads in part:
"(c) Every motor carrier shall also file with the board of each State in which it operates a designation in writing of the name and post-office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. * * *"
*645 Plaintiff, while conceding that appellant did comply with the provisions of the Interstate Commerce Act by designating a resident of New Orleans as its agent in accordance with the mandate of the Federal Act, makes the point that appellant's agent was appointed for a limited purpose only and that this agent is not such an agent as is contemplated by LSA-R.S. 13:3952. Plaintiff's position is that it is only when the nonresident's designation of the agent for the service of process is made pursuant to Louisiana law and the agent is clothed with full and general authority to receive process in any and all kinds or classes of claims that the provisions of the section authorizing nonresident writs of attachment do not apply to the nonresident making such appointment.
There is no question that the purpose of the Interstate Commerce Act in requiring a motor carrier to designate an agent for service of process in each state in which it operates is that of enabling persons transacting business through the motor carrier in the particular state to enforce their rights in contract or in tort in courts of competent jurisdiction. Davies v. Mahanes, D.C., 88 F.Supp. 550, affirmed 4 Cir., 183 F.2d 671. However, such agent is incompetent to receive service of process for the nonresident in an action that had no relationship to the duties, acts, or practices of a carrier in conducting interstate business. Madden v. Truckaway Corp., D.C., 46 F.Supp. 702.
Plaintiff, in arguing that to be exempt from attachment of its property as a nonresident, the appellant, within the meaning of LSA-R.S. 13:3952, would have had to appoint its agent for service under the provisions of the Louisiana law, entirely overlooks the fact that there is no statutory provision in Louisiana pointing out how and in what manner a natural person or a co-partnership domiciled in another state might designate an agent for the service of process here or the office or place in which such designation when made should or may be filed or recorded. The only statute of which we have cognizance, which makes provision for the appointment of an agent for service of process by a nonresident is LSA-R.S. 12:202, which deals with the qualification of foreign corporations to do business in this State. As a condition precedent to being authorized to do business in this State, such corporations must file with the Secretary of State, among other things, a written power of attorney appointing an agent upon whom process may be served.
If it be plaintiff's theory that appellant, a co-partnership domiciled in Georgia, should have complied with LSA-R.S. 12:202, which refers to foreign corporations, by designating its agent with the Secretary of State as would a foreign corporation, this would overlook the fact that there is no Louisiana statute requiring a foreign corporation to designate an agent for service of process with full power and general authority to receive process in any and all kinds or classes of claims. The agent appointed by a foreign corporation seeking to qualify to do business in Louisiana as required by LSA-R.S. 12:202 is vested with authority to receive process only in connection with causes of action arising in the State and growing out of or connected with the business done by the foreign corporation in Louisiana. This was held in Staley-Wynne Oil Corp. v. Loring Oil Co., 182 La. 1007, 162 So. 756. Thus, LSA-R.S. 12:202 is in itself a "limited purpose" statute, and certainly the agent appointed by the foreign corporation under the said section is such an agent as comes within the meaning of the proviso of LSA-R.S. 13:3952. In Burgin Bros. & McCane v. Barker Baking Co., 152 La. 1075, 95 So. 227, 231, it was held that a foreign corporation which had appointed an agent for service of process, upon qualifying to do business in this State, is not subject to attachment and is considered in the same category as a domestic corporation insofar as attachment is concerned.
The Court had this to say:
"It is our conclusion that it was the intention of the Legislature in requiring foreign corporations to appoint *646 resident agents for the service of process as a condition precedent for the doing of business in the state, to regard such corporations as residents of the state at least, if no further, with the object of subjecting them to the jurisdiction of its courts for all purposes connected with legal process, and, consequently, within the meaning of our attachment laws.
"To hold otherwise would lead to practical results highly injurious and detrimental to commercial and industrial operations, as it would permit the seizure and tying up of the property of corporations engaged in vast business enterprises, not only at the instance of those who might have more or less valid claims against the corporations, but also at the whim and caprice of every suitor who might fancy he had an action against said companies or might institute such suits to annoy, inconvenience, and harass the corporations in order to force unjust compromises and settlements."
In arguing that the designation of an agent having only limited powers to receive service of process does not exempt the nonresident from seizure of its property by attachment, plaintiff cites the case of Roper v. Brooks, 201 La. 135, 9 So.2d 485, 490, decided in 1942. We have carefully read that case and we think it is to be readily distinguished from the case under consideration. We refer to the language used by the Supreme Court in stating its conclusion that the proviso in LSA-R.S. 13:3952 does not apply where the agent for service of process is the Secretary of State under the terms of Act 86 of 1928, as amended by Act 184 of 1932 (now LSA-R.S. 13:3474-13:3475) as bringing out the distinction between the cited case and the one now before us:
"By the very terms of Act 86 of 1928, as amended by Act 184 of 1932, the Secretary of State is made the agent of the nonresident solely and only for the purpose of service of process for a particular claim growing out of an accident or collision while a nonresident or his authorized agent operates a motor vehicle on the highways of this State. Clearly, the Secretary of State is not made the general agent of the nonresident for service of process in other kinds or classes of claims. This is quite different from a case where a nonresident names his own agent upon whom service of process for all types of claims may be made. All that the Legislature meant by placing the proviso in the statutes in question was that, if the nonresident had already appointed his own agent upon whom service of process could be made, the provisions of Act 215 of 1920 and Act 220 of 1932 would not be applicable. This is quite different from the Legislature stating that where a nonresident failed to name an agent upon whom process could be made, the Secretary of State would be legally considered his agent for service of process, with the same general legal effects as if the nonresident had named and appointed his own agent for service of process."
The appellant, an interstate motor carrier, is not required by local law to qualify to do business in this State as would a foreign corporation and there being no provisions of law stating how and where appellant could have appointed an agent for service in Louisiana, our opinion is that the designation by appellant of its resident agent under the Interstate Commerce Act, Part II, 49 U.S.C.A. § 321(c), is sufficient to render its property located in this jurisdiction exempt from seizure under a nonresident writ of attachment. There is no question that if plaintiff had caused citation in the suit to be served on the agent designated by appellant pursuant to the Federal Act, the action could have been conducted as one in personam, as appellant would have been effectively brought into court by virtue of such citation. We, therefore, believe that the trial judge was correct in dissolving the writ of attachment issued at the behest of plaintiff.
*647 For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended so as to provide that plaintiff have judgment against appellant for the sum of $14.40; and thus amended and in all other respects, the judgment is affirmed. Plaintiff-appellee is to pay the costs of this appeal.
Amended and affirmed.