hLANDRIEU, Judge.
This action arises out of a collision between a shrimp boat and supertanker which occurred approximately 44 miles off the coast of Louisiana in November 1993. Two Alabama residents, Gary Gazzier and his son Scott (the Gazziers) were injured when the shrimping vessel Fritz Albert on which they were captain and mate, respectively, was struck by the Columba Star, a Liberian owned vessel en route to LOOP, Inc., a deep-water oil port located approximately 13 miles off the Louisiana coast.
Blue Horizon, Inc., the owner of the Fritz Albert (and the Gazzier’s Jones Act employer) negotiated with the owners and operators of the Columba Star (represented by the law firm of Terriberry, Carroll & Yancy) a settlement of $11,150 for the property damage and consequential losses. They were paid by *828 check drawn on the law firm’s trust account and executed a release on April 21, 1994, which specifically reserved:
... any claim they might have for indemnity or contribution from the released parties for sums they might ultimately be cast in judgment to pay any member of the crew of Fritz Albert for personal injury as a result of the aforementioned collision, plus sums they have paid to date or will pay in the future for maintenance and cure to any member Rof the crew of the Fritz Albert in connection with the collision [of November 26,1993].
On July 15, 1994, the Gazziers filed suit in the Civil District Court of Orleans Parish naming as defendants Blue Horizon, Inc., as well as Columba Transport Co., Ltd, and John T. Essberger, GMBH & Co., the purported owners and operators of the Columba Star. In accordance with Louisiana’s Long-Arm statute, Blue Horizon, Inc.'(an Alabama corporation), was served through the Secretary of State. Pursuant to discovery, the Gazziers received documents from LOOP, Inc., indicating that the Columba Star’s agent for service of process was the law firm of Terriberry, Carroll & Yancy in New Orleans.
Through their attorneys (also Terriberry, Carroll & Yancy), defendants Columba Transport Co., Ltd, and John T. Essberger, GMBH and Co. (the defendants [1]), filed decli-natory exceptions of (1) insufficiency of service of process, (2) improper venue, and (3) lack of jurisdiction over the person of the defendant. Although conceding that documents on file with LOOP, Inc., indicated that Terriberry, Carroll & Yancy was their agent for service of process, the defendants argued (1) that the appointment was not a general one and did not pertain to this claim, (2) that no general or any special rule of venue was applicable to this claim, and (3) that no meaningful business contacts existed with the State of Louisiana which would subject the defendants to the personal jurisdiction of the court.
The Gazziers opposed the defendants exceptions and submitted three supporting exhibits. Exhibit “A” consists of excerpted portions of the depositions of Gary A. Hemp-hill and David B. Lawton, two partners in the law firm of Terriberry, Carroll & Yancy (the firm). Lawton claimed that the firm had been |8retained only by the vessel’s (unnamed) underwriters to represent the Co-lumba Star in the incident in question and that the designation of the firm as the agent for service of process on the Columba Star’s applications for utilization of the deepwater port was without the firm’s knowledge or consent. He asserted that no retainer agreement existed between the firm and the owners or the underwriters of the Columba Star and that the firm was hired only when it received a communication to investigate the collision in question.
Exhibit “B” consists of documents received from Loop, Inc., pertaining to 13 shipments of crude oil that the Columba Star transported between January 23, 1990, and August 2, 1994, to the deepwater port from the Middle East. Although the application for utilization of the port dated January 23, 1990, indicates that Columba Star’s agent for service of process was Gulf Ocean Shipping, the twelve remaining applications indicate that the Columba Star’s agent for service of process is Terriberry, Carroll & Yancy. Moreover, each application named Louisiana shipping agents as the local agent of the Co-lumba Star, Gulf Ocean Shipping (9 trips), Biehl & Co. (3 trips) and Sea Gulf Maritime (1 trip).
Finally, Exhibit “C” consists of the correspondence between the owners of the Fritz Albert and Gary Hemphill of Terriberry, Carroll, & Yancy pertaining to the property damage settlement. Contrary to Mr. Hemp-hill’s deposition testimony, nothing in the correspondence or the signed receipt and release indicates the involvement of an underwriter. The receipt and release document refers only to the owners and operator of the Columba Star and leaves open the right of the -owners of the Fritz Albert to *829 proceed (by implication, against the owners and operators of the Columba Star) for indemnity or contribution. Moreover, a Louisiana salvage company was employed to investigate the damage and all negotiations took place out of the law offices of Terriber-ry, Carroll, & Yancy.
The defendants filed a supplemental memorandum in support of their 14exceptions, attaching 2 supporting affidavits. Jon P. Evanson, a Marine Superintendent employed by Vela International Marine Ltd (Vela), declared in pertinent part that (1) Vela was the sole shareholder of Columba Transport Co., Ltd. (Columba) and the “bareboat charterer of the Columba Star”; (2) Columba, a Liberian corporation with its principal place of business in Saudi Arabia, had no business contacts with Louisiana or on-going contractual relationships with Louisiana citizens or residents; (3) in its capacity as vessel owner, Columba has no control over the destination of MTV Columba Star’s charterers; and (4) that “John T. Essberger GmbH [sic] did not own, operate, charter or manage or otherwise have a financial interest in Columba Star on November 26, 1993.” Ian Cairns, the holder of a second mate’s license issued by the United Kingdom and a nautical science graduate of Glasgow Nautical College, declared that, based on the deck log of the Columba Star, the accident occurred 44.1 miles from the Louisiana coast and 35.6 miles from the deepwater port’s “safety zone.”
After consideration of the memoranda and arguments of counsel, the district court granted the three exceptions filed by Colum-ba Transport.[2] In his reasons for judgment, the trial judge found that (1) service of process was insufficient because the defendants’ appointment of Terriberry, Carroll & Yancy as agent for service of process was limited to “incidents occurring at LOOP [which] is not part of the Louisiana coast; (2) “the defendants did not have sufficient minimum contacts with Louisiana for the court to exercise jurisdiction; and (3) none of the general venue requirements of the Louisiana Civil Code had been met.
IsOn appeal, the Gazziers argue that the judgment of the trial court is contrary to law and evidence. We agree.

Service of Process

By federal statute governing deepwa-ter ports operating off the coast of the United States, any vessel owner or operator wishing to utilize such a port is required to designate “an agent in the United States for receipt of service of'process in the event of any claim or legal proceeding resulting from activities of the vessel or its personnel while located within such a safety zone.” 33 U.S.C.A. § 1518(e)(2)(B) (West 1986). The defendants contend that this language is unambiguous, limiting the appointment of the designated agent for service of process to actions arising solely within the deepwater port and its immediate vicinity. Because this accident occurred just prior to the Columba Star’s arrival at the port, the defendants argue that service on their agent for service of process designated solely to satisfy the federal regulation (and not as a general agent for service of process) was invalid per se. We find no support for this argument in the federal regulation, the state codal article, or the record.
Although the clear intent of the federal requirement that each vessel using an American deepwater port facility must provide the name of the vessel’s agent for service of process'in the United States is to afford a claimant in personam jurisdiction over a foreign flag vessel[3] in the event some action arises while the vessel is utilizing the deep-water port, nothing in the statute indicates that the designated agent is limited only to actions arising out of the vessel’s utilization of the deepwater port.
*830 JeLa.Code Civ.Proc. 5251(2) (West 1961) does not refer to general or limited appointments, providing only that “agent for service of process means the agent designated by a person or by law to receive service of process in actions and proceedings brought against him in the courts of this state.” Nothing in the article requires any kind of formality attached to the appointment of an agent for service for process.[4]
Accordingly, service upon the defendants through their designated agent for service of process was valid and the trial judge erred in maintaining appellees’ exception of insufficiency of service of process.

Jurisdiction

To the extent that distinctive admiralty remedies are not involved, state courts have concurrent jurisdiction with federal courts to adjudicate admiralty claims under the “savings to suitors” clause of 28 U.S.C. § 1333(1). Thomas J. Schoenbaum, Admiralty and MARITIME Law § 3-2 (2nd ed. 1994).[5] In order to subject a nonresident to the personal jurisdiction of a state, constitutional due process requires only that minimum contacts exist such that maintenance of the suit is not offensive to traditional notions of fan-play and substantial justice. International Shoe v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The two-part minimum contacts/fairness analysis is applicable in determining whether the state’s assertion of general jurisdiction over an unconsenting defendant comports with constitutional due process, de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103, 108-09 (La.1991).

Minimum Contacts

Where the trial court decides the jurisdictional issue without holding a contradictory hearing (as was done in this case), constitutional and codal principles compel the burden on the non-moving party to be relatively slight and that allegations of the complaint and all reasonable inferences from the record are drawn in favor of the non-moving party.[6] de Reyes, 586 So.2d at 109 (La.1991) (citations omitted). Under this standard, a review of the record clearly indicates that the Gazziers met their burden. Even if, as alleged, there was no substance to the relationships, the defendants purposefully derived extensive benefits from the utilization of the deepwater port (which is directly connected by pipeline to Louisiana[7]) by designating a local shipping agent and a local agent for service of process. Even under the more stringent preponderance of the evidence standard, the principal consequence of a foreign corporation’s designation of an agent for service of process in Louisiana is to subject that corporation to the jurisdiction of a Louisiana court even where the agent for service of process is the only “presence” of the nonresident corporation in the state. Phillips Petroleum v. OKC Ltd. Partnership, 93-1629 (La.4/11/94), 634 So.2d 1186, 1187; see also Fine v. Rubin, 617 So.2d 86 (La. 4th Cir. 1993) (Louisiana had jurisdiction over |gattorneys’ suit for fees where client who *831 had never entered state contacted attorneys by phone and wrote to them in Louisiana to request representation). The fact that the designation of Terriberry, Carroll & Yancy as the Columba Star’s agent for service of process may have been pro forma does not undermine the legal consequences of the designation.

Fairness

The defendants argue that in the constitutional due process context, “the issue of fairness must primarily focus on the right of a defendant not to have to defend itself in a far away forum where it has not engaged in continuous and systematic business activity.” The defendants’ focus is faulty, however.
Having met their burden of demonstrating that the defendants purposefully established minimum contacts in Louisiana, a presumption arose in favor of the Gazziers that the district court’s personal jurisdiction over the defendants is reasonable and the burden shifted to the defendants to prove that jurisdiction is so unreasonable as to overcome the weight of the presumption. See de Reyes, 586 So.2d at 111. We do not find that the defendants’ argument that it is unfair to subject the owners and operators of a supertanker involved in the international oil trade to a “far away forum” meets this burden. The record indicates that, in a period of 56 months, the Columba Star transported oil half way around the globe from the Middle East to the deepwater port of the coast of Louisiana at least 13 times. Each application for use of the deepwater port required a designation of the Columba Star’s agent for service of process. Inherent in supplying the name of an agent for service of process is the understanding that the owners and operators of the Columba Star were, in effect, submitting themselves to the jurisdiction of a “far away forum”. In addition, there is nothing in the reservation of right to proceed against the defendants in the release executed by Blue Horizon, Inc., that suggests such a suit would not be brought in the United States.
| ^Accordingly, subjecting the defendants to the personal jurisdiction of a Louisiana court does not offend our notions of fair play. The trial court was clearly wrong in maintaining the defendants’ exception of lack of personal jurisdiction.

Venue

The trial court found that none of the general venue requirements of the Louisiana Civil Code had been met in this case and maintained the defendants’ exception of improper venue. However, La.Code Civ.Proc. Ann. art. 42(5) (West Supp.1996) provides that an action against a foreign corporation not licensed to do business in the state shall be brought “in the parish where the process may be, and subsequently is, served on the defendant.” Clearly, the defendants are foreign corporations not licensed to do business in Louisiana and process has been served on their designated agent for service of process in Orleans Parish. Accordingly, venue is proper in the Civil District Court for the Parish of Orleans.
For the foregoing reasons, the judgment of the trial court maintaining the defendants declinatory exceptions is reversed and the matter is remanded for further proceedings.
REVERSED.
ARMSTRONG, J., dissents.

. Although Blue Horizon, Inc., remains a viable defendant in this matter, for purposes of this opinion references to "the defendants” pertains only to Columba Transport Co., Ltd. and John T. Essberger, GMBH & Co.

. The judgment, as well as the "Reasons for Judgment” refers only to the exceptions filed by Columba Transport without reference to Colum-ba’s co-defendant, John T. Essberger, GMBH & Co. Accordingly, it appears that the exceptions, as filed on behalf by John T. Essberger, GMBH & Co., remain pending.

. Given the difficulty encountered by the Gazzi-ers in determining who or what entity is the responsible for the Columba Star, such a requirement is indeed advisable.

. Although La.Rev.Stat. 12:308 (West 1994) requires foreign corporations authorized to transact business yn the state to register at least one agent for service of process with the Secretary of State, it is the only statutory requirement to do so. We do not find the defendants failure to register their agent for service of process disposi-tive in this case. As noted in Gahr Development, Inc. of Panama v. Nedlloyd Lijnen, B.V., 542 F.Supp. 1224 (E.D.La.1982), aff'd, 723 F.2d 1190 (5th Cir.1984), although a foreign corporation may be in violation of the Louisiana Foreign Corporation law by failing to register its agent for service of process, that violation alone does not invalidate service on an agent expressly designated by a principal as its agent for service of process.

. Where, as in this case, the plaintiff invokes in personam jurisdiction, he must establish that the court has personal jurisdiction over the defendant by showing that the defendant was properly served with process pursuant to statute or rule and that the service does not violate standards of due process. Id.

. In this case, the record indicates that the trial court did not conduct a contradictory hearing on the exception to jurisdiction, but rather based its judgment on pleadings, memoranda, and discovery dispositions taken in the matter. If there had been a contradictory hearing, the plaintiffs would have had to prove facts in support of their showing that jurisdiction was proper by a preponderance of the evidence.

. See 33 U.S.C.A. §§ 1507, 1508 (West 1986).