687 So.2d 1101 (1997)
Vitalij BALASHOV
v.
BALTIC SHIPPING COMPANY.
No. 96-CA-1129.
Court of Appeal of Louisiana, Fourth Circuit.
January 22, 1997.
Writ Denied April 18, 1997.
*1102 John J. Broders, Elizabeth Slatten Healy, Jonathan H. Sandoz, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Matthew D. Baxter, Egorov, Pughinsky, Afanafiev & Juring, Philadelphia, PA, for Defendant/Appellant.
Richard J. Dodson, David C. Vidrine, Dodson & Vidrine, Baton Rouge, for Plaintiff-Appellee.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
BYRNES, Judge.
The plaintiff, Vitalij Balashov, allegedly sustained severe injuries while working on board the defendant, Baltic Shipping Company's vessel, the M/V Sverdlovsk. Plaintiff ascribes these injuries to the negligence of Baltic's employees and to the unseaworthiness of the vessel.
The proceedings commenced on November 30, 1995 with the seizure of a Baltic vessel within the jurisdiction of the lower court pursuant to a nonresident writ of attachment and, after a trial on the merits, concluded two months later on February 1, 1996 with a personal judgment against Baltic for $6,083,054.00, plus interest from the date of the accident on $450,000.00, costs of the proceedings and the costs of the custodia legis in connection with the attachment. Baltic appeals. We affirm.
The nonresident writ of attachment was issued pursuant to LSA-C.C.P. art. 3541(5)[1] against a Baltic vessel, the M/V Nickolay Krylenko, based on the assumption that Baltic was a foreign corporation[2] without a resident agent for service of process duly registered with the Louisiana Secretary of State.
The record reflects that Baltic filed a "Notice of Appointment of Agent for Service of Process" with the United States District Court for the Eastern District of Louisiana on February 13, 1995, more than eight months prior to November 30, 1995 when the plaintiff, Balashov, filed his petition for a nonresident writ of attachment. This notice appointed Mr. Henry Chaisson as Baltic's agent for service of process. The trial court found that absent registration with the Louisiana Secretary of State, this designation was not sufficient to defeat the nonresident writ of attachment. The trial court relied on LSA-R.S. 13:3485 which requires registration with the Secretary of State, but Baltic counters that LSA-R.S. 13:3485 refers only to individuals and partnerships and the failure to refer to foreign corporations such as Baltic means that the statute was not intended to impose the requirement of registration *1103 on them. Baltic contends that had it been the intention of the legislature to include corporations within the ambit of LSA-R.S. 13:3485 it would have used the term "corporation" or replaced the terms "individual" and "partnership" with the more universal term "person" which would have included not only those two terms, but "corporations" as well. Cf. LSA-C.C.P. art. 5251(12).
We agree with Baltic that LSA-R.S. 13:3485 was not intended to apply to corporations. This conclusion is reinforced by McMahon's comment to LSA-R.S. 13:3485[3] which notes that this statute was, "Added on the recommendation of the Louisiana State Law Institute to encourage the appointment of agents for the service of process by nonresident individuals and partnerships." [emphasis added.]
That the legislature's distinction between individuals and partnerships on the one hand and corporations on the other is an historically conscious and intentional one may be seen by reference to Act 215 of 1920 concerning nonresident attachments as discussed in Roper v. Brooks, 201 La. 135, 9 So.2d 485, 489:
Section 1. Be it enacted by the General assembly of the State of Louisiana, That in all suits instituted in any of the courts of this State, in which the demand is for damages arising from an offense, quasi-offense, or tort and where the defendant, whether an individual, partnership (commercial or ordinary) or a corporation, is a non-resident of this State, or not domiciled therein, or, in the case of a corporation, not incorporated under the laws thereof, the plaintiff shall have the right to sue out a writ of attachment against the property of the defendant, upon making affidavit and giving bond, as now required by law, in suits against non-resident defendants for other causes of action, provided that the provisions of this act shall not apply in cases where the individual, partnership (commercial or ordinary) or corporation has appointed an agent in the State of Louisiana upon whom service of process made be made. [Emphasis added.]
Although we agree with Baltic that LSA-R.S. 13:3485 does not apply to corporations, we believe that the reason it does not is because it is assumed that nonresident corporations with local agents for service will have registered them under other provisions of the law. In Normann v. Burnham's Van Service, 73 So.2d 640 (La.App.Orl.1954) this court recognized and discussed the distinction in this area of the law between individuals and partnerships on the one hand, and corporations on the other. Therefore, the fact that LSA-R.S. 13:3485 does not refer to corporations does not, in itself, mean that Baltic can defeat a nonresident writ of attachment with an appointed local agent for service of process who is not registered with the Secretary of State.
Baltic concedes that it had no agent for service registered with the Louisiana Secretary of State, but contends that it was required to have only a "designated" agent who did not have to register with the Louisiana Secretary of State. LSA-C.C.P. art. 5251(2) provides:
"Agent for service of process" means the agent designated by a person or by law to receive service of process in actions and proceedings brought against him in the courts of this state.
Baltic contends that "designation" as required by LSA-C.C.P. art. 5251(2) is not the same as "registration" with the Secretary of State. In support of this position Baltic cites Gazzier v. Columba Transport Co., Ltd., 95-1755 p. 6 (La.App. 4 Cir. 5/29/96), 675 So.2d 826, 830, where it says: "Nothing in [LSA-C.C.P. art. 5251(2)] requires any kind of formality attached to the appointment of an agent for service of process."
*1104 In Gazzier service of process upon an agent appointed by the defendant, but not registered with the Secretary of State, was held to be sufficient to maintain personal jurisdiction upon the defendant. But no nonresident writ of attachment issued in Gazzier. Therefore, Balashov also cites Gazzier, but for the proposition that an agent's appointment may be sufficient to permit personal service upon the nonresident to be made through such an agent without that agent being registered with the Secretary of State. We agree.
Further, plaintiff contends that the failure to register that agent with the Secretary of State means that such agent is not "duly appointed" within the intendment of LSA-C.C.P. art. 3541(5) and the existence of such an unregistered agent will not preclude the issuance of a nonresident attachment. Simply put, according to the plaintiff, Baltic's appointed but unregistered agent could be served but could not prevent the issuance of a nonresident writ. We agree.
Baltic contends that when LSA-C.C.P. art. 3541(5) provides authority for a nonresident writ of attachment where the nonresident "has no duly-appointed agent for service of process within the state" that the term "duly-appointed" does not imply the formality of registration with the Louisiana Secretary of State and that mere appointment will suffice.
Baltic notes that LSA-R.S. 12:308 requires foreign corporations authorized to transact business in this state to have a registered agent for service of process. But Baltic contends that it is a foreign corporation transacting business in interstate or foreign commerce under LSA-R.S. 12:302(H) and is not required to register.[4]
To further complicate matters, in a move that Baltic characterizes as irreconcilably inconsistent with its refusal to dissolve the attachment because of the existence of Baltic's designated agent, the trial rendered a personal judgment against Baltic based on service on its appointed but unregistered agent.[5]
We find that the concepts of nonresident attachment and personal jurisdiction are not necessarily and without exception mutually exclusive. Roper v. Brooks, 201 La. 135, 9 So.2d 485 (1942). The Roper court dealt with the law that designates the Secretary of State as the legal agent for service of process for nonresident motorists involved in any accident or collision on the roads of this state. Such service was found to confer in personam jurisdiction over the nonresident, but such in personam jurisdiction was found not to defeat the writ of nonresident attachment. Roper demonstrates that in personam jurisdiction is not in all cases an absolute bar to the issuance and maintenance of a nonresident writ of attachment. However, Roper can be distinguished because the appointment of the agent for service of process in Roper (the Secretary of State) was by operation of law, i.e., non-consensual. Of greater significance is the fact that the statute which designated the Secretary of State as the agent for service of process for nonresident motorists specifically provided that "nothing in this Act shall be construed as affecting other methods of process against non-residents as now provided by existing laws." Section 3 of Act 184 of 1928. The Roper court read this language to mean that the appointment of the Secretary of State by operation of law as the agent for service for nonresident motorists did not supplant, but was in addition to, the pre-existing process of nonresident writ of attachment. The Roper court reasoned:

*1105 It will be noted that in none of the statutes in question is it provided that, since the Secretary of State is designated as the agent of the nonresident upon whom service of process can be made, the nonresident motorist, who used the highways was to be placed on the same legal basis as those who named their own particular agents for the service of process. [Emphasis added.]
Roper, 9 So.2d at 490.
Plaintiff cites Bowers v. Greene, 360 So.2d 639 (La.App. 3 Cir.1978) for the proposition "that subsequent personal service on a nonresident, either on the non-resident or his agent [emphasis original] appointed to receive service, does not defeat the attachment," thereby implying that attachment is proper against a nonresident with a "duly appointed agent for service of process within the state."[6] Such a reading of Bowers would effectively nullify LSA-C.C.P. art. 3541(5) which only permits attachment when based on nonresidency where the nonresident "has no duly appointed agent for service of process within the state." But Bowers neither states nor implies this. Bowers did not even involve an agent for service of process. In Bowers an attachment issued against a nonresident who had no local agent for service. The court held that personal service on the defendant did not necessitate the dissolution of the attachment. The fact that personal service was made upon the defendant in Bowers did not alter the fact that the defendant was a nonresident without a local agent. The real thrust of Baltic's argument is not that service upon its appointed agent subsequent to the issuance of the attachment invalidated the attachment; rather Baltic contends that its designated agent was "duly appointed" precluding the issuance of a nonresident attachment from the beginning and that the trial court's recognition of the validity of the subsequent service upon Baltic's agent was tantamount to recognition that agent was "duly appointed" within the intendment of LSA-C.C.P. art. 3541(5).
LSA-C.C.P. art. 1261B referring to both domestic and foreign corporations provides in pertinent part that:
If the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods.... [Emphasis added.]
Attachment is not one of the alternative methods listed by LSA-C.C.P. art. 1261B. However, we find LSA-C.C.P. art. 1261B is not exclusive. Process by way of attachment of the property of a nonresident without a registered agent under LSA-C.C.P. art 3541(5) provides a means of process in addition to those means provided by LSA-C.C.P. art. 1261B.
Baltic cites Gahr Development, Inc. v. Nedlloyd Lijnen, B.V., 542 F. Supp. 1224, 1227 (E.D.La.1982), aff'd, 723 F.2d 1190 (5 Cir.1984) which states that:
Plaintiffs argue that Strachan could not properly be Nedlloyd's agent for service of process because Strachan was not registered with the Louisiana Secretary of State as such an agent. Louisiana Foreign Corporation law, La.Rev.Stat. 12:308, requires foreign corporations authorized to transact business in the state to register at least one agent for service of process with the Secretary of State. With the exception of this statute, no other Louisiana law requires that agents for service of process be so registered. In the context of the controversy involved in this case, I find that La.Rev.Stat. 12:308 is not controlling; rather, La.Code Civ.Pro. art. 525[1](2) is the relevant provision, and it defines agent for service of process merely as a party so "designated." Although a foreign corporation may be in violation of the Louisiana Foreign Corporation law if it does not have a registered agent for service of process, [footnote "4" to follow] that does not make invalid service on an agent expressly designated by a principal as the agent for service of process, although the agent is not "registered."

*1106 Therefore, even under Louisiana law the writs of attachment must be vacated.
[Emphasis added.]
In footnote "4" contained in the body of the above quote the Gahr court stated:
It should be noted that La.Rev.Stat. 12:302(H) may well exempt Nedlloyd from even having to register itself or any agent with the Secretary of State since Nedlloyd engages only in interstate and foreign commerce.
Gahr is suggestive, not controlling. It is only a federal district court opinion and the portion quoted is dicta because the court had already decided to maintain the attachment in question under federal law. Moreover, the court noted that prior to seizure the defendant informed the seizing plaintiff in writing that Strachan Shipping Company of New Orleans (Strachan) was its authorized agent for service of process. In the instant case the plaintiff was not so informed. We also note that when the Fifth Circuit affirmed Gahr on appeal it did not advert to the attachment issue.
Baltic notes that it attempted to register its agent with the Secretary of State, but was refused. Baltic argues that "it is not a proper basis for the extraordinary remedy of attachment that an out of state defendant has failed to do the impossible." Baltic's contention would carry greater weight were it able to show that it was possible for it to register, but the plaintiff prevented its registration.
Assuming that it is not possible for a nonresident corporation doing business in interstate and foreign commerce to register with the Secretary of State, it does not necessarily follow that the appointment of a non-registered agent for service is sufficient to defeat a writ of nonresident attachment.
"The purpose of the law in granting to citizens of the state the high privilege of attaching the property found within the state of one who is a non-resident is to furnish the resident creditor a process of its courts, enabling him to enforce his demands against his nonresident debtor, at least to the extent of the property seized, which is all that the law can give." South Street Lumber Co. v. Dickerson, 235 La. 1062, 106 So.2d 513, 516 (1958). To allow the "secret" appointment of unregistered agents would frustrate this policy. Any unregistered appointment is effectively a "secret" appointment[7] in the absence of proven actual notice such as existed in Gahr. From the standpoint of prospective litigants an unregistered agent for service would normally be tantamount to no agent at all. An unknown and for practical purposes unknowable agent does not provide an effective process whereby demands against a nonresident may be enforced. We are not bound by the dicta in Gahr and elect not to follow it. Although we do not suggest any bad faith on the part of Baltic, were we to adopt Baltic's argument we might be inviting abuse by others in the future.
Nor does Normann v. Burnham's Van Service, 73 So.2d 640 (La.App.Orl.1954) support Baltic's position even though the Normann court upheld the dissolution of a nonresident attachment against a non-Louisiana litigant whose designated agent was not registered with the Secretary of State. The Normann court noted that there was no provision under Louisiana law for a foreign party such as the defendant (an individual or co-partnership) to register with the Secretary of State. However, a careful reading of Normann makes it clear that the agent for process in question was found by the court to be registered, not just appointed. The defendant, Burnham's Van Service, registered its agent for service in accordance with the Interstate Commerce Act, Part II, 49 U.S.C.A., Sec. 321(c), which reads in part:
"(c) every motor carrier shall also file with the board of each State in which it operates a designation in writing of the name and post-office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be *1107 served in any proceeding at law or equity brought against such carrier. * * *"
Normann, 73 So.2d at 644.
Thus Normann could best be characterized as a constructive notice case, i.e., litigants may be held to have constructive notice of the law, including the registration requirements of the Interstate Commerce Act. Baltic has failed to make any showing that its notice in one federal district court is the equivalent to the registration in a central registry pursuant to a statute of which potential litigants might be held to have constructive knowledge similar to the facts presented to the Normann court. Baltic has failed to show how the notice of appointment it filed in federal court was actual notice to Balashov which would bring it within the ambit of Gahr.
We conclude that LSA-C.C.P. art. 3541(5) contemplated the issuance of attachments against nonresident corporations without registered agents regardless of whether it was possible or required that they register.
The designation by Baltic of Mr. Chaisson as its appointed agent was a matter of personal convenience to Baltic. It can show no prejudice when service is made upon an agent whose appointment Baltic judicially confessed in these proceedings was the proper agent for service in these proceedings just because that designation was not registered with the Secretary of State for whatever reason. Baltic has failed to advance any argument as to why service could not be made on Mr. Chaisson other than its contention that it was inconsistent for the trial court to sustain both the attachment and in personam jurisdiction. Outside of this asserted inconsistency, which assertion this Court rejects, this Court is aware of no basis for Baltic to complain of service upon the agent it voluntarily designated.
Accordingly, we find no error in the trial court's ruling that Baltic's appointed but unregistered agent could serve as a basis for personal jurisdiction over Baltic, but could not serve to defeat the writ of nonresident attachment.

PLAINTIFF IS NOT BARRED BY 46 U.S.C. Sec. 688(b)(1)(B) FROM MAINTAINING AN ACTION UNDER THE MARITIME LAW OF THE UNITED STATES
Baltic contends that 46 U.S.C. Sec. 688(b) prevents plaintiff from bringing this action because plaintiff was a nonresident alien injured in foreign waters and has a remedy under of the laws of his home country, Russia. 46 U.S.C. Sec. 688(b) "Limitation for certain aliens; applicability in lieu of other remedy" provides that:
(1) No action may be maintained under subsection (a) [the Jones Act] of this section or under any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred
(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resourcesincluding but limited to drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or transporting supplies, equipment or personnel, but not including transporting those resources by a vessel constructed or adapted primarily to carry oil in bulk in the cargo spaces; and
(B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions. As used in this paragraph, the term "continental shelf" has the meaning stated in article I of the 1958 Convention on the Continental Shelf.
(2) The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person
(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or

*1108 (B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.
[Emphasis added throughout.]
46 U.S.C. Sec. 688(b)(1) prohibits certain nonresident aliens from asserting United States Jones Act or maritime claims for injuries occurring in foreign waters. 46 U.S.C. Sec. 688(b)(2)(B) provides an exception to that prohibition where the claimant "establishes that no remedy was available to that person ... under the laws of the nation in which ... the person for whose injury or death a remedy is sought maintained citizenship or residency."
It is uncontested that at the time plaintiff was injured he was a resident and citizen of Russia injured in Spanish waters aboard a Russian vessel. Baltic contends that because plaintiff had a remedy under Russian law, plaintiff is barred by 46 U.S.C. Sec. 688(b) from bringing this claim.
The trial court expressly found that Russia provided remedies equivalent to those provided by the United States. Baltic challenges this finding. Baltic and plaintiff are unable to agree on what the Russian law is for purposes of determining whether the 46 U.S.C. Sec. 688(b)(2) exception to the prohibition of 46 U.S.C. Sec. 688(b)(1) applies. Nor can they agree on how the trial court should have informed itself on this issue and how this Court should do so. However, a careful reading of 46 U.S.C. Sec. 688 in its entirety convinces us that it is unnecessary for this Court to resolve the controversy over Russian law.
The question of Russian law under 46 U.S.C. Sec. 688(b)(2)(B) as an exception to the 46 U.S.C. 688(b)(1) prohibition does not arise until it is first determined that the prohibition applies. The 46 U.S.C. Sec. 688(b)(1) prohibition requires more than a showing that Balashov was a nonresident alien and that the injury did not occur in the territorial waters of the United States. 46 U.S.C. Sec. 688(b)(1)(A) imposes the additional requirement that in order to bar a Jones Act or maritime action it must be shown that the claimant was injured while "in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resources ..." Baltic's failure to show that plaintiff was "in the employ of an enterprise engaged in the exploration, development, or production of off-shore mineral or energy resources ..." under 46 U.S.C. 688(b)(1)(B) means that plaintiff's action is not barred by 46 U.S.C. 688(b)(1). See Vaz Borralho v. Keydril Co., 710 F.2d 207 (5 Cir.1983).[8] We never reach the question of Russian law.[9]

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED BALTIC'S MOTION TO CONTINUE THE TRIAL
Baltic complains that it was error for the trial court to set this case for trial only sixteen days after Baltic's answer was due, which error was compounded when the trial court refused Baltic's request for a continuance.
The conduct of the trial is within the discretion of the trial court subject to review only for abuse of that discretion.
Plaintiff was injured on June 7, 1995 and this state court proceeding was filed on November 30, 1995 at which time the nonresident attachment issued. Simultaneous with the issuance of the attachment the trial court appointed Kevin Conner to represent the nonresident, Baltic. The record reflects that Baltic had retained the Terriberry firm, a well-known admiralty firm, several months previously to represent it in connection with *1109 plaintiff's injury. The Terriberry firm in fact represented Baltic in its attempt to have the attachment dissolved and even took writs to this Court when the trial court refused the demand for dissolution of the attachment.[10]
By Certificate dated January 28, 1996 the plaintiff filed a Motion and Order to Set for Trial which is stamped filed January 22, 1996. This is followed by an order dated January 22, 1996 fixing the trial for February 1, 1996. Plaintiff in his brief alleges that:
A conference was held before the trial court on January 16, 1996, at which time a trial date was requested by both parties and set based upon the court's calendar and those of Mr. Conner and the Terriberry firm.
Baltic does not dispute this, but there is nothing in the record to substantiate plaintiff's assertion. The Terriberry firm did not assist Conner in Baltic's defense at the trial. However, even Baltic was complaining about the mounting costs of the custodia legis in connection with the attachment. After reviewing the record as a whole we cannot say that the trial court abused its discretion in considering the expenses and problems[11] arising out of the attachment in moving to trial expeditiously, but not with what could be characterized as indecent haste.
As we have previously determined that the question of Russian law is not relevant to the outcome of this appeal, it was not reversible error for the trial court to refuse to grant a continuance in order to provide Baltic more time in which to develop its case on Russian law.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
PLOTKIN, J., concurs.
PLOTKIN, Judge, concurring.
I concur in the result achieved by the majority but must respectfully decline to join in the majority's analysis of the writ of nonresident attachment. I believe that this analysis departs from the necessities of determining first whether the attachment was authorized by law and second whether the defendant's attempts to designate an agent for service of process should defeat the attachment, and proceeds to produce inordinate dicta regarding constructive notice and secretive appointments that is not required by the dictates of law, reason, or the facts of this case.
NOTES
[1] LSA-C.C.P. art. 3541(5) provides that:

A writ of attachment may be obtained when the defendant:
* * * * * *
(5) Is a nonresident who has no duly appointed agent for service of process within the state.
[2] Baltic's status as a foreign corporation is not disputed.
[3] Baltic previously raised this issue in a writ application to this court which was denied on the basis that LSA-R.S. 13:3485 requires Baltic to register with the Secretary of State. Vitalij Balashov v. Baltic Shipping Company, 95-C2726 (La. App. 4 Cir. 1/16/96). Based on our analysis of LSA-R.S. 13:3485 whereby we concluded unequivocally that LSA-R.S. 13:3485 does not apply to corporations such as Baltic, we find palpable error in the denial of this writ and, therefore, find that a contrary result is now justified. In re M.W., 93-1809 (La.App. 4 Cir. 6/30/94), 641 So.2d 582, 584.
[4] In its original petition, plaintiff alleged that Baltic was a "foreign company not authorized to do but doing business in the State of Louisiana." [Emphasis added.]
[5] In its judgment, the trial court made the following statement with which this Court agrees:

Defendant Baltic Shipping Company has previously filed pleadings before this Court wherein which Baltic judicially admitted that it had appointed an agent for service of process in this State. Although not effective as a defense to a nonresident writ of attachment, the Defendant has judicially admitted that the appointment of the agent for service of process was otherwise valid. The legal consequence of the appointment of an agent for service of process is to subject the Defendant Baltic Shipping Company to the personal jurisdiction of the courts of this State for all claims brought against it before the courts of this State.
[6] This last quoted phrase is from LSA-C.C.P. art. 3541(5).
[7] By using the term "secret" appointment we do not mean to suggest that Baltic's appointment in this case was a deliberate and bad faith attempt to frustrate potential creditors. To the contrary, it appears that Baltic took reasonable steps under the circumstances to appoint an agent. However, what is reasonable under the circumstances was insufficient to defeat the nonresident attachment.
[8] 46 U.S.C. 688(b) was apparently enacted primarily for the purpose of preventing foreign nationals working on oil rigs in foreign waters from taking advantage of generous benefits under United States maritime law. It was not intended to curtail the rights of blue water seamen such as the plaintiff in the instant case.
[9] Plaintiff filed a motion to confine argument to the record and to forbid the introduction of new evidence in an effort to prevent Baltic from introducing new evidence on appeal concerning Russian law. Baltic filed a motion asking this Court to take judicial notice of its view of Russian law. As this court has determined that Russian law is not relevant, those motions are all moot.
[10] The denial of this writ application by this Court is contained in the unpublished writ opinion, Vitalij Balashov v. Baltic Shipping Company, 95-C2726 (La.App. 4 Cir. 1/16/96).
[11] The crew members were confined to the vessel during the pendency of the attachment under very uncomfortable conditions.